IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Honorable R. Brooke Jackson

Civil Action No. 11-cv-01010-RBJ-CBS

RIO LUCIANO and DEBBY SALA,
individually and on behalf of their minor child J.S.,

      Plaintiffs.

v.

EAST CENTGRAL BOARD OF COOPERATIVE EDUCATIONAL SERVICES,

      Defendant.

---

## ORDER

---

Five pre-trial motions are pending and are addressed in this order.

**FACTS**

Rio Luciano and Debby Sala are the parents of a 14-year old child, "J.S.," who has been diagnosed with severe disabilities including communication disabilities, mobility impairment, developmental delays, epilepsy and other developmental, physical and psychological disabilities. From approximately June 2008 through March 2010 they lived in Genoa, Colorado.  The East Central Board of Cooperative Educational Services ("ECBOCES") administered the special education program in that district and was responsible for providing J.S. a "free appropriate public education" as required by the federal Individuals with Disabilities Act ("IDEA"), 20 U.S.C. § 1401 et seq.

During the 2008-2009 school year ECBOCES provided J.S. with special education in a program in the Genoa-Hugo School District.  At the end of the 2008-2009 school year plaintiffs

were informed that during the 2009-2010 school year J.S. would attend a newly established special education program administered by ECBOCES in the Limon School District.

In their Complaint [docket #1] the plaintiff parents allege that they were only allowed a "cursory inspection" of the Limon facilities before the school year began.  However, they could tell that the facilities, including toilet facilities, were not "accessible" to J.S.  They allege that school representatives refused to discuss their concerns.  ECBOCES told them that it planned to renovate the facilities over the Christmas vacation to resolve accessibility issues and denied plaintiffs' request to return J.S. to her previous school in the Genoa-Hugo district.

Plaintiffs allege that prior to the Christmas vacation J.S. had to defecate and urinate in diapers.  She was allegedly denied access to a swing she had used at Genoa to aid in her vestibular development and access to various other services, the result of which was that J.S. regressed physically and emotionally.  Plaintiffs allege that the accessibility problems were not addressed during the Christmas vacation, so they removed J.S. from the program.

Because the parents did not believe that ECBOCES was providing a free appropriate public education as required by IDEA, they pursued relief through an administrative hearing system.  *See* 20 U.S.C. § 1415(b), (f).  In their "Due Process Complaint" they alleged violations of IDEA, Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. §§ 794 ("Section 504"), and Title II of the Americans with Disabilities Act ("Title II of the ADA"), 42 U.S.C. §§ 12132.

In February 2011 the parties (the parents on half of JS and ECBOCES) settled the administrative claim on terms set forth in a Settlement Agreement and Release [#45-2].  In exchange for a cash sum and other consideration, the parents released ECBOCES from any claim that might be available under IDEA and, with exceptions noted, from any claim under Section 504 or Title II of the ADA.  *Id.* ¶¶1-4.  The released claims included "any and all claims for

educational injuries allegedly suffered by J.S. as a result of the conduct alleged in the Due Process Complaint and all claims for compensatory education services, speech language services, physical therapy services, and/or occupational therapy services provided to J.S. as a result of the conduct alleged in the Due Process Complaint." *Id.* ¶4.  However, the release expressly did not include "claims for monetary relief under Section 504 or Title II of the ADA based on physical, medical, emotional, or psychological injuries, property loss, or moving-related costs allegedly suffered by J. S. or Parents as a result of the conduct alleged in the Due Process Complaint." *Id.* ¶4.

Plaintiffs filed this suit on April 15, 2011, asserting three claims for relief: (1) violation of section 504; (2) violation of the Title II of the ADA; and (3) breach of contract.  In response to the pending motion for summary judgment, they have indicated that they wish to dismiss the breach of contract claim.  Their remaining claims focus on alleged denial of adequate access to appropriate toilet facilities; access to a vestibular swing; access to facilities such as the playground; and access to appropriate instruction or training in communication, including sign language training, occupational and life skills, music therapy and toilet training.  They seek compensatory and punitive damages, attorney's fees and costs.  The case is set for a jury trial commencing July 30, 2012.

**CONCLUSIONS**

**Defendant's Motion to Exclude the Proferred Testimony and Report of Dr. Jana Burke [#41].**

ECBOCES objects to Dr. Burke's opinions on grounds that she is not qualified to render them and that they amount to impermissible instruction on the law. I agree with the latter argument and, therefore, grant this motion with limited exceptions noted below.[1]

Dr. Burke provides information, advice and training to employers and other organizations and individuals regarding compliance with the Americans with Disabilities Act. Burke Report [41-1] at 1. Although, as noted by ECBOCES, her educational background does not appear to be focused on these subjects, an expert may be qualified by "knowledge, skill, experience, training, or education." I am satisfied from her biographical information that she has knowledge and work experience sufficient to qualify her as an expert in ADA compliance.

However, her report consists of stating what the ADA and Rehabilitation Act require, replete with citations to the statutes and regulations issued thereunder; reciting facts gleaned from the plaintiffs and other sources; and expressing opinions that ECBOCES violated the two statutes. She summarizes her opinions by stating that ECBOCES violated the statutes by (1) denying J.S. the benefit of programs, activities and services because she was unable to access them; (2) denying J.S. a "free appropriate public education;" (3) discriminating against J.S. by failing to address physical barriers, including access to the playground area and path-of-travel barriers; and (4) failing to ensure that staff communication with J.S. was as effective as with other students. Report at 2.

---

[1] The parties have filed four "Daubert" type motions objecting to each other's expert witnesses. Neither party has requested an evidentiary hearing or oral argument. Without a request, the Court may consider the motion on the briefs. *See U.S. v. Nacchio*, 555 F.3d 1234, 1251 (10th Cir. 2009).

In *Specht v. Jensen,* 853 F. 2d 805 (10th Cir. 1988), the court considered "whether Fed. R. Evid. 702 will permit an attorney, called as an expert witness, to state his views of the law which govern the verdict and opine whether defendants' conduct violated that law." *Id.* at 806.   In concluding that the testimony was inadmissible, the court emphasized that instructing the jury on the law is the sole province of the judge.   *See id.* at 808-10.   Nor is it helpful to the jury to have an expert instruct the jury on how it should decide the case.   *Ibid.*   Dr. Burke's opinions would amount to instruction on the law and that ECBOCES violated the law.

Ms. Burke is not, of course, an attorney, and *Specht* was expressly directed to opinions of attorneys.   *Id.* at 808.   *See Zuchel v. City and County of Denver, Colorado,* 997 F.2d 730, 742 (10th Cir. 1993)(distinguishing *Specht* on that basis and affirming the trial court's admission of an expert on the standard of care applicable to police training, tactics and the use of deadly force).   In the *Zuchel* the court stated that "[c]ourts generally allow experts in this area to state an opinion on whether the conduct at issue fell below accepted standards in the field of law enforcement."   *Ibid.*   In a similar vein, courts generally permit, if not require, expert testimony on the standard of care applicable to medical and other professionals and whether a defendant's conduct fell below that standard.   Here, however, Dr. Burke is not discussing a standard of care. She expresses opinions on what statutes and regulations require and that ECBOCES violated those requirements.   Even though she is not an attorney, she purports to be an expert on the law vis-à-vis compliance with Section 504 and Title II of the ADA.   I conclude that the reasoning of *Specht* is applicable.

Plaintiffs suggest that *Greer v. Richardson Independent School Dist.,* 752 F. Supp. 2d 746 (N.D. Tex. 2010), in which the court permitted an expert to express opinions on a school district's compliance with regulations issued pursuant to the ADA, is authority supporting the

admissibility of Dr. Burke's opinions.  The Court did not discuss whether the testimony usurped the function of the judge or jury.  Rather, the court simply indicated that it would "exercise its discretion to allow Baker to testify on the issue of ADA compliance." *Id.* at 751.  I grant that *Greer* is some authority for plaintiffs' position.  However, having again considered *Specht* as well as *U.S. Aviation Underwriters, Inc. v. Pilatus,* 582 F. 3d 1131, 1150 (10th Cir. 2009)(stating that expert witnesses "may not testify to ultimate issues of law governing the jury's deliberations")*,* I am exercising my discretion not to allow the bulk of Dr. Burke's testimony.

Her opinions are not necessarily all improper.  On page 7 she refers to her "audit" of the Limon school on March 9, 2012 and to certain photographs she has reviewed.  Based on this "audit" and the photographs, she states that "extensive access barriers still exist, even after modifications were made by the Limon School District over the past two years," including the main parking area, the main entrance, the cafeteria, the playground, doorways throughout the facility, restrooms, lack of accessible signage throughout the facility, and the gymnasium." *Id.* at 7-8.  If she can, and will, express these opinions without reference to what the law requires or whether she believes the law has been violated, it would appear to be helpful to the jury and within her expertise.  The remainder of her opinions, as expressed in the report, are inadmissible.

**Defendant's Motion to Exclude the Proferred Testimony and Report of Nancy Cason, Psy.D. [#42].**

Dr. Cason is a licensed clinical psychologist with expertise in working with individuals, including children, with autism and other developmental disorders.  In her report [#42-1] she reviews J.S.'s history through school records and interviews of the parents and a therapist who has worked with the family since they moved away from Genoa.  She states that "it was well documented that J.S. enjoyed going to school, participated in activities, showed affection and

giggled in response to social interactions." *Id.* at 12. However, she experienced a "significant regression during her time in the ECBOCES schools. Not only did J.S. have a skills regression, she appears to have experienced a major depression which she has recovered from only in the past year." *Id.* at 9. "Once she was removed from ECBOCES and placed in an appropriate and accessible setting, J.S. has very gradually recovered to her former social, emotional and behavioral stability." *Id* at 12.

ECBOCES argues that Dr. Cason's opinions should be excluded under Rule 702 and *Daubert v. Merrell Dow Pharmaceuticals,* 509 U.S. 579, 589 (1983). The main thrust of the objection is that Dr. Cason cannot reliably link J.S.'s alleged regression and depression to ECBOCES.

Expert opinion testimony is admissible if it is relevant and reliable. *Daubert,* 509 U.S. at 589, 594-95 (1993). Opinions are relevant if they would "assist the trier of fact to understand the evidence or to determine a fact in issue." Fed. R. Evid. 702. They are reliable if (1) the expert is qualified "by knowledge, skill, experience, training, or education," (2) his opinions are "based upon sufficient facts or data," and (3) they are "the product of reliable principles and methods." *Ibid.*

The proponent of expert testimony has the burden to show that the testimony is admissible. *Nacchio,* 555 F. 3d at 1241. The trial court plays a "gatekeeping" role. This is not, however, a role that emphasizes exclusion of expert testimony. Judge Kane aptly summarized the thrust of *Daubert* in interpreting and applying Rule 702:

> A key but sometimes forgotten principle of Rule 702 and *Daubert* is that Rule 702, both before and after *Daubert,* was intended to relax traditional barriers to admission of expert opinion testimony. Accordingly, courts are in agreement that Rule 702 mandates a liberal standard for the admissibility of expert testimony. As the Advisory Committee to the 2000 amendments to Rule 702 noted with

apparent approval, "[a] review of the caselaw after *Daubert* shows that the rejection of expert testimony is the exception rather than the rule.

*Cook v. Rockwell Intern. Corp.,* 580 F. Supp. 2d 1071, 1082 (D. Colo. 2006) (citations omitted).

ECBOCES argues that Dr. Cason is not qualified to diagnose or treat seizure disorders. I agree. So does she. Cason depo. [#42-G] at 30. ECBOCES argues that Dr. Cason is not qualified to express the opinion that J.S.'s alleged increase in seizure activity was caused by stress experienced in the Limon program. I agree, but I do not read her report has suggesting otherwise. ECBOCES argues that Dr. Cason is not qualified to interpret J.S.'s non-verbal communication during her interview of J.S., because it was a short interview and the parents were present. I do not agree, nor has ECBOCES provided any basis for its argument. Dr. Cason explained that she relied on prior knowledge of how J.S. communicated, and she further explained that she has worked with many nonverbal and severely disabled individuals and is experienced with interpreting nonverbal communications such as eye blinks, putting one's head down, and fussiness, Cason depo. at 131-32. I find that explanation to be reasonable and consistent with her expertise. ECBOCES's unsupported objection goes to the weight but not the admissibility of that testimony.

ECBOCES criticizes the fact that Dr. Cason relied on information provided by J.S.'s parents. I do not agree. Plaintiffs will have to lay a sufficient foundation for her reliance on that information per Rule 703. Similarly, Dr. Cason's reliance on comments of an occupational therapist during a 15-minute interview, assuming a proper foundation under Rule 703, is not inappropriate. The credibility of the information on which Dr. Cason relied is fair game for attack, as is whether she placed too much reliance on the parents' statements, but that does not render the opinions inadmissible.

ECBOCES cites the opinion of Dr. James Waters, also a clinical psychologist, who criticizes Dr. Cason's report on several grounds.  For example, he believes she relied too uncritically on the parents' information.  Again, that goes to the weight, not the admissibility of the information.  Dr. Waters criticizes Dr. Cason's failure to administer certain tests that can assist the examiner in gauging the validity of the information provided by such sources.  This reflects a difference in methodology that goes to the weight of the evidence.  The fact that Dr. Waters might have gone about the task differently does not show that the opinions of Dr. Cason, a qualified clinical psychologist, are so unreliable that they cannot be heard.

Ultimately, the thrust of the objection is that Dr. Cason is not qualified to express the opinions that J.S. suffered regression and depression because of her school attendance at the Limon facility.  I do not agree.  Admittedly, she bases the opinion in substantial part upon a comparison of information she received on J.S.'s emotional state before Limon, during the period of time she was in the Limon program, and after she was removed to a new school.  Her conclusions can be fairly challenged, not only based on her sources of information, e.g., the parents, but also on what common sense tells me – probably no one can be absolutely certain as to whether J.S.'s became increasingly depressed while in the Limon program or, if so, what the cause or causes of any such depression or regression were.  The record of the case shows that J.S. is severely disabled and has great difficulty communicating what she was thinking or why.  Yes, the parents may be viewed as biased.  But, as defendant's expert Dr. Waters acknowledges, psychologists often must rely on the statements of patients or their parents, as "they may have little else."  Waters report [#42-10] at 3l.

As mentioned above and discussed again below, Dr. Waters nevertheless believes that Dr. Cason placed too much reliance on the parents' statements.  The jury can evaluate the

parents' statements and, in the context of Dr. Cason's and Dr. Waters' differing views, the quality of Dr. Cason's evaluation.  However, I find no basis to exclude the opinions as inherently unreliable or based on methods that have no logical basis.

Dr. Cason does comment in her report that ECBOCES did not provide "federally mandated" access, etc.  She should be careful to avoid such comments in her trial testimony, as they potentially run afoul of the same concerns I have expressed regarding Dr. Burke.  Overall, however, the Court finds that Dr. Cason's opinions are relevant and reliable within the meaning of Rule 702.  The pending motion is, in effect, a motion in limine, and the Court always maintains its right to make evidentiary rulings in the context of the actual evidence presented at trial.  However, the motion to exclude Dr. Cason's testimony at this time is denied.

**Plaintiff's Motion to Limit Proferred Expert Testimony of Thomas Reiley, M.D. [#43].**

Dr. Reiley, a neurologist, was hired by ECBOCES to address certain issues in Dr. Cason's February 2012 report and to discuss J.S.'s medical history as it relates to harm.  Report, March 28, 2012 [#43-1] at 1.  In his report Dr. Reiley discusses medical records of J.S. beginning with her presentation with seizures at the age of two months.  He then discusses Dr. Cason's evaluation of J.S.  He then expresses a number of opinions.  Without meaning to oversimplify his report, his opinions include: (1) the medical records do not indicate parental or physician concern about a decline in J.S.'s happiness or developmental progress during fall 2008 through spring 2010; (2) concern is noted that seizures worsened in spring 2010 following the parents' decision, not recommended by any medical caregiver, to discontinue Topamax; (3) there is no indication that J.S. is capable of defecating or urinating when placed passively on a toilet, nor that she is happy to be "toileted;" (4) J.S. does not have autism, and any claim that actions taken or not

taken at an ECBOCES school caused a deterioration of autism is mistaken; (5) J.S. has severe to profound global mental retardation; (6) her seizures were best, but incompletely, controlled with Topamax; control of side effects should be discussed with a neurologist; she was not seen by a neurologist during the fall 2008 to spring 2010 period when her seizures alleged worsened; (7) medical history supplied by the parents contains inconsistencies; (8) the medical records indicate that Ms. Sala has expressed unrealistic expectations of J.S.; (9) it is not possible for J.S. to have suffered from "petit mal" seizures as described by Dr. Cason; (10) Dr. Cason's opinions about how J.S.'s autism may have been impacted by seizures, medication side effects and depression are all made suspect by Dr. Cason's mistaken beliefs about epilepsy and her failure to recognize the true diagnosis of global severe mental retardation; (11) cognitive decline is common in children with frequent seizures and with Lennox-Gastaut Syndrome, which J.S. has been thought to have; (12) the reason for J.S.'s seizures, mental retardation and EEG abnormality has never been evident; (13) Dr. Cason's interpretation of J.S.'s behavior after initiating care with an occupational therapist is questionable; (14) Dr. Cason's interpretation of J.S.'s reactions to her parents' description of her situation in the ECBOCES school versus other schools is also subject to question; (15) if J.S.'s IEP team in Eastern Colorado been aware that J.S. did not have autism, some of the programs promised her might have been rethought to meet her true needs, and the team and J.S.'s parents could have been more realistic about her needs; (16) it is common for parents to hold out hope for a severely disabled child, to be frustrated when answers are not found, and to experience anger and frustration over perceived broken agreements over how the child will be supported by schools; and (17) it is not normal for a family to deny the existence of a specific disability or its permanence.

Plaintiffs argue that (1) Dr. Reiley's opinion regarding autism should be excluded, because of ECBOCES's "judicial admission" that J.S. has been diagnosed with autism; they comment that they have made "no attempt to address this issue" in reliance on defendant's admissions; (2) it should also be excluded because it was based on a "mere record review; Dr. Reiley has not met J.S., her parents, her teachers or her other caregivers; even Dr. Waters, defendant's other expert, testified that he would not diagnose someone with autism without an evaluation; (3) Dr. Reiley's opinion that J.S.'s parents had unrealistic expectations should be excluded as speculation and irrelevant.

ECBOCES responds that it accepted the parents' representation that J.S. had autism, that Dr. Reiley is qualified to diagnose autism based upon his training and experience including "hundreds of autism evaluations over the course of his career," and that an accurate diagnosis of J.S.'s condition is relevant to the case, including the appropriateness of a vestibular swing, and to the jury's evaluation of Dr. Cason's opinions. Response [#52] at 7-10. ECBOCES also defends Dr. Reiley's opinions regarding the parents' unrealistic expectations, pointing out that he has extensive experience working with families of neurologic children.

This case, like all cases, is ultimately a search for the truth. J.S. has been diagnosed with autism. Her parents have believed that she has autism. If, in fact, J.S. does not have autism, and a misdiagnosis has affected everyone from the parents to the schools to Dr. Cason, then the evidence should be heard.

I am likewise not persuaded by plaintiffs' claim of prejudice. This case was filed on April 15, 2011. Plaintiffs have had ample time to obtain their own neurologic expert. I understand the point that plaintiffs and apparently defendants initially were proceeding on the belief that J.S. has autism. However, Dr. Reiley's opinions were issued on March 28, 2012 and

presumably disclosed shortly thereafter.  So far as I am aware, plaintiffs have not attempted to arrange an IME or to engage a rebuttal expert.  In the circumstances, the Court would be open to that (but not to continuing the trial scheduled to begin on July 30, 2012).  However, I am not willing to deprive the jury and the parties of what could be significant relevant evidence.

I also do not agree that Dr. Reiley is not qualified to express opinions regarding J.S.'s condition based on his review of medical records.  Doctors frequently form opinions based upon review of medical records or even sets of facts presented in the form of hypothetical questions. ECBOCES has presented no significant evidence that a neurologist cannot form an opinion regarding autism based on a record review, nor does Rule 703 require it.  Examining the patient may well be a preferred part of a diagnosis, as Dr. Waters has indicated.  I would not be surprised if Dr. Reiley would acknowledge that he too would prefer to meet the patient. However, his not having met J.S. or the parents goes to weight, not admissibility.

I do agree with the plaintiffs that certain of the opinions expressed by Dr. Reiley in his report are not admissible.  In my numbered list above, item 15 amounts to speculation as to what the schools might have done had they been informed of a neurologist's opinion that J.S. does not suffer from autism but instead suffers from severe global mental retardation (keeping in mind as well that what her actual condition is a matter in dispute).  Items 16 and 17, consisting of Dr. Reiley's opinions about how families of children with severe disabilities generally act, are not relevant.  Any opinions concerning what is motivating the behaviors of J.S.'s parents in this case are not admissible.  That is not to say that Dr. Reiley cannot comment on what achievements are unrealistic for someone in J.S.'s condition, nor is it to say that Dr. Reiley cannot express his opinion that expectations noted in the medical records are unrealistic.  What he cannot do is speculate on the parents' state of mind.

With the exceptions noted, however, the motion is denied.

**Plaintiff's Motion to Exclude Proferred Expert Testimony of James Waters [#44].**

As mentioned above in discussing defendants' motion to exclude the testimony of Dr. Cason, Dr. Waters is a clinical psychologist.  His resume [#44-1] indicates that he has substantial education in that field and substantial experience in the fields of clinical and forensic psychology and neuropsychology.  His report [#44-3] essentially is a critique of Dr. Cason's evaluation and report.  I will not attempt to summarize a 69-page report.  Suffice it to say that he believes that Dr. Cason has accepted the truth of J.S.'s parents without sufficient skepticism; that she did not give sufficient attention to inconsistencies in their statements or to other information in the records that cast some degree of doubt on some of the parents' statements; that she did not avail herself of certain tests that would have provided relevant information; and ultimately, that her opinions are flawed by overreliance on the parents' statements.  Dr. Waters also expresses disagreements with specific conclusions reached by Dr. Cason.

Plaintiffs' object to Dr. Waters' testimony on grounds that (1) he lacks experience and expertise in evaluating individuals with severe cognitive and physical disabilities; (2) he is not qualified to opine on the credibility of another witness, e.g., of a classroom teacher; and (3) that his opinions are based upon insufficient facts and data.  ECBOCES responds [#53] that (1) Dr. Waters has worked with "severely affected children" and with nonverbal children, as confirmed in his deposition testimony, and with severe mental illness, as acknowledged in plaintiffs' motion; (2) that he is fully qualified to comment on the quality of Dr. Cason's work; and (3) that he reviewed a long list (repeated in the response) of materials in forming his opinions, much more than what Dr. Cason reviewed.

I agree with plaintiffs that if Dr. Waters were tempted to comment on the truthfulness of another witness, whether it is a school teacher, Dr. Cason or someone else, he could not do so unless an appropriate foundation is presented pursuant to Fed. R. Evid. 608. That is not in any event the thrust of his proposed testimony as I understand it. He plans to comment on the quality of the work done and conclusions reached by another expert in his field, Dr. Cason. That is what "rebuttal" experts often do.

Having reviewed his credentials and his report, I am satisfied that he has sufficient knowledge, education, training and experience to express opinions on the methods used by Dr. Cason, as reflected in her report, and whether the conclusions generated by those methods are reliable. As indicated above, I am satisfied that Dr. Cason's opinions pass the tests of relevance and reliability under Rule 702 such that they can be expressed at trial. That does not mean that they are not fair game for criticism by another professional in the field.

This also is not a matter of comparing who reviewed the most documents. The key document for purposes of Dr. Waters' opinions is the Cason report. Essentially, his testimony amounts to a critique, based on his knowledge, training and experience, of Dr. Cason's methods and, therefore, her conclusions. Dr. Waters apparently has reviewed numerous other records as well. If plaintiffs believe that he has not read the right ones, then that is fair game for cross-examination. Except as noted above, the motion is denied.

**[Defendant's] Motion for Summary Judgment [#45].**

Section 504 provides:

No otherwise qualified individual with a disability in the United States . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance . . . .

29 U.S.C. § 794(a).  "A prima facie case under § 504 consists of proof that (1) plaintiff is handicapped under the Act; (2) he is 'otherwise qualified' to participate in the program; (3) the program receives federal financial assistance; and (4) the program discriminates against plaintiff."  *Hollonbeck v. U.S. Olympic Comm.,* 513 F.3d 1191, 1194 (10th Cir. 2008).

Title II of the ADA requires proof that

no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity.

42 U.S. C. § 12132.

Because Section 504 and Title II of the ADA involve substantially (though not entirely) the same standards, they may be analyzed together for present purposes.  *See, e.g., Urban ex rel. Urban v. Jefferson County Sch. Dist. R-1,* 89 F.3d 720, 728 (10th Cir. 1996).  It is undisputed that J.S. is disabled or handicapped for purposes of both statutes and, for purposes of Section 504, that ECBOCES receives federal financial assistance.  The question for this case is whether, because of J.S.'s disabilities, ECBOCES subjected her to "discrimination" and denied her the opportunity to participate in or to receive the benefits of programs or services for which she was qualified.  In order to obtain money damages, plaintiffs must also show that the discrimination was intentional, which could be inferred from a defendant's "deliberate indifference" to an individual's needs.  *See Powers v. MJB Acquisition Corp.,* 184 F.3d 1147, 1153 (10th Cir. 1999).

In its 36-page motion, supported by 20 exhibits containing 162 pages of documents, ECBOCES argues that plaintiffs have not produced any evidence that ECBOCES discriminated against J.S. because of her disability, or that it was deliberately indifferent to her needs, or that its actions caused damages to the plaintiffs.  In their 42-page response, supported by 17 exhibits containing 172 pages of documents, plaintiffs argue that there is such evidence.  Having

reviewed the motion, response, reply and the exhibits tendered, the Court finds that, for the most part, it need not address the parties' many points and counterpoints in detail. It is clear to this Court that there are genuine issues of material fact that cannot be resolved on a motion for summary judgment.

I do, however, need to address three specific arguments raised in the motion for summary judgment. First, ECBOCES argues that plaintiffs released and therefore cannot assert a claim for damages arising from the lack of instruction or training in communication, occupational and life skills, and music. I disagree. As indicated above, in the settlement of the IDEA complaint plaintiffs released "any and all claims for education al injuries allegedly suffered by J.S. as a result of the conduct alleged in the Due Process Complaint and any and all claims for compensatory education services, speech language services, physical therapy services, and/or occupational therapy services provided to J.S. as a result of the conduct alleged in the Due Process Complaint." Settlement Agreement and Release [#45-2] ¶4. The parties did not define "educational injuries" which, at best, is an ambiguous term. What the parties did do, however, was provide that the release did not included "claims for monetary relief under Section 504 or Title II of the ADA based on physical, medical, emotional, or psychological injuries, property loss, or moving-related costs allegedly suffered by J.S. or Parents as a result of the conduct alleged in the Due Process Complaint." *Ibid.* That is what the plaintiffs are seeking here.

Second, ECBOCES argues that plaintiffs are barred from seeking "moving-related costs" by reason of an agreement that the parties reached on March 8, 2010. Again, I disagree. Under that agreement [#45-17] the parents agreed that J.S. would return to the Limon school on March 23, 2010. However, they did not comply. Rather, they moved to Evans, Colorado and enrolled J.S. in school there. In fact, according to ECBOCES, the parents had already signed a lease for a

residence in Evans before they entered into the March 8 agreement.  As plaintiffs point out, another term of the March 8 agreement was that ECBOCES would pay for an independent educational evaluation ("IEE") for J.S.  *Id.* ¶16.  This was not done, and ECBOCES reasonably argues that the requirement became moot when plaintiffs moved to Evans.  Plaintiffs' third claim for relief asserted that ECBOCES's failure to pay for an IEE was a breach of the March 8, 2010 agreement.  They have wisely dropped that claim.  The fact that they moved to Evans shortly after agreeing to return J.S. to the Limon program, whether or not they had committed to the move before entering into the agreement, can be used by ECBOCES as evidence of plaintiffs' credibility.  However, that agreement was superseded by the later IDEA settlement, in which the parties expressly agreed that plaintiffs' potential claim for moving-related costs was not released.[2]

Third, ECBOCES argues that punitive damages and emotional distress damages cannot be recovered under Section 504 or Title II of the ADA.  I agree with respect to punitive damages.  *See Barnes v. Gorman,* 536 U.S. 181, 189 (2002).  With respect to emotional distress, the law is unsettled.  In *Sheely v. MRI Radiology Network, P.A.,* 505 F.3d 1173, 1198-1204 (11th Cir. 2007), the court held that where intentional discrimination is shown, non-economic compensatory damages, including damages for emotional distress, may be recovered under Section 504 of the Rehabilitation Act.  I agree with that court's reasoning.  *See also N.T. ex rel Trujillo v. Espanola Public Schools,* 2005 WL 6168433, at *13-14 (D.N.M. June 21, 2005); *but see Bell v. Board of Education of the Albuquerque Public Schools,* 652 F. Supp. 2d 1211 (D.N.M 2008).

---

[2] ECBOCES also comments, [a]s an initial matter, there is no legal basis for asserting that Section 504 recognizes a claim for constructive eviction."  Motion at 29.  Having made that statement, however, it provides no analysis or authorities in support.  The Court therefore declines to address that issue, casually inserted in the motion, at this time.

**ORDER**

1.  Motion #41 is GRANTED, with the possible exceptions noted.

2.  Motion #42 is DENIED, with the minor exceptions noted.

3.  Motion #43 is DENIED, with exceptions noted.

4.  Motion #44 is DENIED.

5.  Motion #45 is GRANTED IN PART AND DENIED IN PART.  The motion is

    granted as to the breach of contract claim, which is dismissed with prejudice.  The

    motion is denied as to the Section 504 and Title II of the ADA claims.

DATED this 13th day of June, 2012.

BY THE COURT:

_____
R. Brooke Jackson
United States District Judge